UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CHRISTOPHER TATE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case Number: 2:14-cv-01610-JHE |
| ) | |
| CAROLYN W. COLVIN, ACTING ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. | |

**MEMORANDUM OPINION**[1]

Plaintiff Christopher Tate ("Tate") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his application for Supplemental Security Income ("SSI"). (Doc. 1). Tate timely pursued and exhausted his administrative remedies. This case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

**I. Factual and Procedural History**

Tate was a forty-two year old male at the time of the Administrative Law Judge's ("ALJ") decision. (Tr. 132). Tate graduated high school and previously worked as a cook, busboy, dishwasher, welder, construction laborer, and moving van helper/driver. (Tr. 43, 52, 60, 206–07, 212–18).

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 10).

Tate filed his application for SSI on December 14, 2010. (Tr. 132). The Commissioner initially denied Tate's application, and Tate requested a hearing before an ALJ. (Tr. 67, 70–72). After the hearing, the ALJ denied Tate's claim on December 21, 2012. (Tr. 21–31). Tate sought review by the Appeals Council, but it declined his request on June 14, 2014. (Tr. 1–3). On that date, the ALJ's decision became the final decision of the Commissioner. On August 18, 2014, Tate initiated this action.  (*See* doc. 1–2).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ

---

[2]In general, the legal standards applied are the same whether a claimant seeks DIB or SSI.  However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)   whether the claimant is currently employed;
(2)   whether the claimant has a severe impairment;
(3)   whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4)   whether the claimant can perform his or her past work; and
(5)   whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999);

---

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

*accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

### IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found that Tate did not engage in substantial gainful activity from the alleged onset date of December 7, 2010. (Tr. 23). At Step Two, the ALJ found Tate has the following severe impairments: asthma, hypertension, disorders of the back, obesity, osteoarthritis of the knees, and organic mental disorder. (*Id.*). At Step Three, the ALJ found Tate does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 24).

Before proceeding to Step Four, the ALJ determined Tate's residual functioning capacity ("RFC"), which is the most a claimant can do despite his impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined Tate has the RFC to perform sedentary work as defined in 20 C.F.R. 416.967(a), with specified limitations. (Tr. 26). He can never crawl or climb ladders, ropes or scaffolds, and can only occasionally climb ramps or stairs. (Tr. 26). In addition, Tate can only occasionally stoop, kneel, crouch, or balance. (*Id.*). Tate should also avoid concentrated exposure to extreme cold, wetness, humidity, and irritants, and should avoid exposure to the use

of hazardous machinery, operational control of moving machinery, and unprotected heights. (*Id.*). Tate is limited to the performance of simple, routine, and repetitive tasks in a work environment where changes occur on no more than an occasional basis. (*Id.*).

At Step Four, the ALJ determined that Tate is unable to perform any past relevant work. (Tr. 29). At Step Five, the ALJ determined, based on Tate's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that Tate could perform. (Tr. 30). Therefore, the ALJ determined Tate has not been under a disability, as defined by the Social Security Act, and denied Tate's claim. (Tr. 30–31).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Here, substantial evidence supports the ALJ's determination that Tate failed to demonstrate a disability. The ALJ applied the proper standards to reach the conclusions that Tate's low IQ score did not establish that he suffers from the severe impairment of mental retardation in Step Two, and Tate does not meet Listing 12.05C because he does not suffer from deficits in adaptive functioning.

### A. Evaluation of Tate's Severe Impairments

Tate contends that the ALJ erred when she did not find that his mental retardation

constituted a "severe impairment" and this determination was not supported by substantial evidence. (Doc. 9 at 9–10). Substantial evidence is "such relevant evidence as the reasonable mind might accept as adequate to support a conclusion." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982). "The claimant [] must bear the burden . . . at step two that he has a medically severe impairment or combination of impairments." *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). In order to determine whether an impairment is severe, the Eleventh Circuit established the "slight abnormality" test which defines the claimant's burden of proof. *Bridges v. Bowen*, 815 F.2d 622, 625 (11th Cir. 1987). Under this standard, "an impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Id.* (quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)). Basic "work-related activities" include the ability to walk, sit, or stand; the ability to understand and carry out simple instructions; the ability to respond appropriately to supervisors and co-workers; whether the claimant has good use of judgment; and whether the claimant has the capacity to see, hear, and speak. *See* 20 C.F.R. § 416.921(b). Thus, "the 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).

The ALJ properly found that Tate's mental disorder did not constitute a severe impairment under the regulations, specifically because Tate failed to demonstrate that his alleged mental retardation affected his ability to perform work-related tasks. There is little evidence in the record related to Tate's mental health other than his IQ scores and the State agency physician's finding of organic mental disorder. (Tr. 228, 357). Tate's IQ score testing was

performed by a Birmingham Public Schools Special Education Examiner. (Tr. 228–32). As an initial matter, the Commissioner argues the Birmingham Public Schools report did not come from an "acceptable medical source" to adequately establish his low IQ as an impairment. (Doc. 13 at 5). However, this report is from an "acceptable medical source" under the listings. *See* 20 C.F.R. § 416.913(a)(2) ("Accepted medical sources are . . . [l]icensed or certified psychologists. Included are school psychologists, or other licensed or certified individuals with other titles who perform the same function as a school psychologist in a school setting, for purposes of establishing intellectual disability, learning disabilities, and borderline intellectual functioning only."). This report concluded that Tate falls within the "educable retarded" range of intellectual functioning, (Tr. 228–32), but nothing else in the record indicates that Tate has been diagnosed with mental retardation by any treating, examining, or review physician.

Tate contends that he is mentally retarded because he "was in special education classes throughout his time in school, has never held a driver's license, and has had multiple jobs (never holding one for longer than a few months) of an unskilled nature." (Doc. 9 at 9). However, the record indicates that Tate has worked for the majority of his adult life and is independent with his daily activities. (Tr. 369). While there is conflict as to whether Tate previously held a driver's license, he reported to the State agency's physician he let his driver's license expire, presumably because it was hard for him to "move [his] foot from the gas to the brake pedal" and that it was difficult for him to sit up straight to drive after he was injured. (Tr. 223, 369). In fact, Tate previously worked as a moving van driver and helper, which is categorized as a "semi-skilled" position (Tr. 60, 212, 369). Prior semi-skilled work experience is inconsistent with a claimant suffering from mental retardation. *See Outlaw v. Barnhart*, 197 Fed. Appx. 825, 827 n.1 (11th Cir. 2006).

Additionally, in a Function Report completed in January 2011, Tate's responses demonstrate that he does not struggle with performing work-related tasks. He reported that he does not have difficultly with things such as memory, completing tasks, or understanding and following instructions. (Tr. 225). He also reported that he gets along well with authority figures and handles stress well. (*Id.*) He denied needing help with personal grooming, taking medication, or being reminded to go places. (Tr. 222, 224). Furthermore, Tate reported that also he prepares simple food, can handle a savings account, count change, and use a checkbook. (Tr. 222–23). At the hearing, Tate testified that he does most of the cooking at his house, helps with the household cleaning, does his own laundry, and enjoys reading books about cars. (Tr. 55–57).

Considering Tate's IQ scores in combination with his previous work history and daily function, the record as a whole suggests that Tate's mental disorder caused only moderate limitations, at most. Tate's extensive work history, no prior diagnosis of mental retardation, and no reported difficulties caused by his mental disorder that affect his ability to carry out work-related activities support the ALJ's determination this impairment and related symptoms fall within the meaning of a "slight impairment," and does not constitute a severe impairment at Step Two of the sequential evaluation.

Despite this, any error in failing to find that Tate's mental retardation constituted a severe impairment is harmless because the ALJ found in Tate's favor at Step Two and continued with the sequential evaluation. "The finding of any severe impairment, based on either a single impairment or a combination of impairments, is enough to satisfy step two because once the ALJ proceeds beyond step two, he is required to consider the claimant's entire medical condition, including impairments the ALJ determined were not severe." *Burgin v. Comm'r of Soc. Sec.,* 420 F. App'x 901, 902 (11th Cir. 2011) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir.

1987)). Here, the ALJ found severe impairments and moved on to Step Three, where he then considered Tate's mental condition in his decision. (Tr. 23–26). "Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe. Instead, at step three, the ALJ is required to demonstrate that it has considered all of the claimant's impairments, whether severe or not, in combination." *Heatly v. Comm'r of Soc. Sec.,* 382 F. App'x 823, 825 (11th Cir. 2010).

The record indicates that the ALJ considered all of Tate's impairments, both severe and non-severe, in combination, during Step Three, despite the fact that he did not find that Tate's mental retardation qualified as a severe impairment. (Tr. 24–26). The ALJ discussed in detail Tate's medical history, testimony, complaints of pain, and limitations due to his ailments. (*Id.*) Therefore, this claim would not require reversal because the record does not support Tate's assertion that his mental disorder qualifies as a severe impairment. Even if the record indicated that Tate's mental retardation was severe, this error was harmless because the ALJ found at least one severe impairment, continued the sequential analysis, and considered all of Tate's impairments to determine his residual functioning capacity. (Tr. 23–26). Thus, the ALJ's determination that Tate's mental retardation does not constitute a severe impairment is consistent with the applicable legal standards and is supported by substantial evidence.

### B. The ALJ's Finding That Tate Did Not Meet Listing 12.05C is Supported by Substantial Evidence

Tate also argues the ALJ erred when he determined Tate did not meet Listing 12.05C of the Regulations. (Doc. 9 at 7–8). Listing 12.05 states, in pertinent part:

> 12.05 Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.05C.

To satisfy this listing, a claimant must show his impairment meets both the criteria listed in the introductory paragraph and the criteria in subsection C. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, §§ 12.00A, 12.05C ("If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, [the Commissioner] will find that your impairment meets the listing."). In other words, to meet Listing 12.05C, "there must be a showing of (1) deficits in adaptive functioning; (2) a qualifying IQ score; (3) onset before age 22; and (4) the requisite deficits in work-related functioning." *Wigfall v. Colvin*, WL 7405466 at *3 (S.D. Ga. Dec. 30, 2014).

There is "a rebuttable presumption that a claimant manifested deficits in adaptive functioning before the age of 22 if the claimant established a valid IQ score between 60–70." *Grant v. Astrue*, 255 F. App'x 374, 375 (11th Cir. 2007) (*citing Hodges v. Barnhart*, 276 F.3d 1265, 1268–69 (11th Cir. 2001)). However, evidence of the claimant's daily life can be presented to "rebut this presumption of mental impairment." *Id.* (*citing Hodges*, 276 F.3d at 1268–69). Thus, the ALJ is not required to find that a claimant is mentally retarded based on a valid IQ score, rather "[t]he ALJ is required to examine the results in conjunction with other medical evidence and the claimant's daily activities and behavior." *Popp v. Heckler*, 779 F.2d 1497, 1500 (11th Cir. 1986). To meet the criteria in 12.05C, a claimant must not only have a qualifying and valid IQ score, but he must also be able to satisfy the introductory paragraph of the listing, which

looks for "deficits in adaptive functioning." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, §§ 12.00A. *See also Popp*, 779 F.2d at 1499.

The ALJ's determination that Tate did not meet listing 12.05C due to his lack of demonstrated deficits in adaptive functioning is supported by substantial evidence. In reviewing Tate's impairments and whether he met the criteria in Listing 12.05C, the ALJ stated the following:

> The undersigned also considered whether the claimant met listing 12.05. To satisfy listing 12.05, the evidence must demonstrate that the claimant's intellectual impairment satisfied the diagnostic description in the introductory paragraph of listing 12.05 *and* any one of the four sets of severity requirements . . . . While the claimant produced a FSIQ of sixty-four, there were few records suggesting that he had considerable adaptive deficits either during the initial manifestation period or throughout his adult life . . . . The undersigned reviewed the other records and noted that none of the claimant's treatment providers suggested that he had any particular deficits in adaptive functioning or that he required any assistance or special care . . . . Overall, the combination of this evidence strongly supports the conclusion that the claimant did not have significant adaptive deficits within the meaning of listing 12.05, and therefore, did not meet [or] equal listing 12.05.

(Tr. 25–26).

Tate argues the ALJ failed to adequately assess his IQ score, (Doc. 9 at 6), but this is inapposite to the ALJ's finding that Tate did not meet Listing 12.05C because the ALJ's determination was based on Tate's adaptive functioning, rather than the validity of the score itself. (Tr. 25–26). "A valid IQ score does not have to be conclusive of mental retardation where the IQ score is inconsistent with other record evidence regarding the claimant's daily living activities and behavior." *Perkins v. Comm'r, Soc. Sec. Admin.*, 553 F. App'x 870, 873 (11th Cir. 2014). Here, the ALJ found that Tate produced a valid IQ score of 64, however "there were few records suggesting he had considerable adaptive deficits." (Tr. 25). In the listing, "adaptive activities" and activities for daily living include "cleaning, shopping, cooking, taking public

transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00C(1).

Although Tate presented a valid IQ score, the ALJ concluded that his work history, education, and daily activities were not consistent with an actual deficit in his adaptive functioning. A qualifying IQ score is merely one requirement that must be satisfied, because claimants do not meet Listing 12.05 without first demonstrating that he or she suffers from deficits in adaptive functioning. *See Garrett v. Astrue*, 244 Fed. Appx. 937, 939 (11th Cir. 2007) (finding that despite a valid IQ score, the claimant demonstrated no deficits in adaptive functioning because he was able to cook simple meals; perform chores such as dishwashing; he could build model cars, attend church, watch television, and play cards; and believed he could return to unskilled work "with orientation and instruction"); *Davis v. Astrue*, 2008 WL 2939523 *3 (M.D. Ala. Jul. 25, 2008) (finding the claimant did not meet the criteria in 12.05C because she completed the twelfth grade; was able to read, write, and perform simple math; was engaged during the questioning at the hearing and was able to follow the questions; she held a driver's license; and she performed past semi-skilled employment).

Similarly, the record supports the ALJ's finding that Tate did not suffer from limitations in adaptive functioning despite his low IQ score. Tate was never diagnosed with mental retardation, rather he was found to fall within the "educable retarded" range of intellectual functioning. (Tr. 228–32). Furthermore, the reviewing physician found that Tate was "mostly impacted by physical symptoms." (Tr. 369). Tate did not make any "mental health related allegations" during his examination, and Tate has been able to work and independently perform activities of daily living. (Tr. 369). Tate further reported to the reviewing physician he formerly

held a driver's license, despite his argument he has never held a driver's license. (Tr. 369; doc. 9 at 6). Additionally, Tate reported that he is able to prepare simple meals, can follow written and spoken instructions, can handle stress and change, and goes shopping. (Tr. 369). Tate did state that he has trouble with others to the extent that "they don't understand [him] and [his] injury," and he struggles with concentration from time to time due to pain. (Tr. 369). However, there is no indication in the record these symptoms are related to his intellectual functioning, as opposed to just being symptoms of his physical limitations. (Tr. 369).

Furthermore, in Tate's Function Report, he overwhelmingly reported that he suffers from physical limitations rather than limitations associated with his low IQ score. Before his injuries, he reported that he enjoyed running, working, playing with his children, washing his clothing, working on cars, riding horses, and riding motorcycles. (Tr. 221). He denied needing help with personal grooming, taking medication, or being reminded to go places. (Tr. 222, 224). Tate does not need assistance or reminders with his dressing, bathing, shaving, hair care, using the toilet, or feeding himself (absent some help he needs in order to dress, bathe, and use the toilet due to his physical limitations). (Tr. 221). His hobbies and interests include horseback riding, swimming, basketball, watching TV, playing sports, and coaching football. (Tr. 224). He also reported that he has phone conversations "every now and then," and used to attend family functions, go to social events, and ride motorcycles with "the guys" before he was injured. (Tr. 224–25). He also reported that he prepares simple food, can handle a savings account, count change, and use a checkbook. (Tr. 222–23).

At the hearing, the ALJ noted that Tate "was articulate, able to answer questions without hesitation, and did not appear to have significant issues understanding the issues discussed." (Tr. 25). Contrary to Tate's argument that the ALJ's "speculation does not necessarily suggest a

higher level of intellectual functioning," the ALJ properly weighed this evidence, along with other evidence in the record, to make his determination. (Doc. 9 at 7; tr. 25–27). "The ALJ is not prohibited 'from considering the claimant's appearance and demeanor during the hearing.'" *Macia v. Bowen*, 829 F.2d 1009, 1011 (11th Cir. 1987) (quoting *Norris v. Heckler,* 760 F.2d 1154, 1158 (11th Cir. 1985)). Tate was able to answer the ALJ's questions, and he testified he does most of the cooking at his house, helps with the household cleaning, does his own laundry, and enjoys reading books about cars. (Tr. 55–57). He also his discussed hobbies and interests, such as football games and car racing, but stated that he can no longer participate in these activities due to his physical injuries. (Tr. 56–57).

Based on the record as a whole, Tate has not demonstrated that he meets the criteria in Listing 12.05C. While he has a valid IQ as required by the listing, Tate failed to show he suffers from deficits in adaptive functioning. As a result, the ALJ properly determined that Tate's IQ score was inconsistent with his work experience, activities, and daily functioning.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Tate's claim for a period of disability and disability benefits is **AFFIRMED** and this action **DISMISSED WITH PREJUDICE.**

DONE this 30th day of September 2015.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE